**VO VAN CHAU, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF STATE, et al., Defendants.**

**Civ. A. No. 95–989 SSH.**

United States District Court,
District of Columbia.

June 29, 1995.

William R. Stein, Washington, DC, Robert B. Jobe, San Francisco, CA, for plaintiffs.

Sherri L. Evans, Asst. U.S. Atty., Washington, DC, for defendants.

## OPINION

FRIEDMAN, District Judge.

### I. BACKGROUND

This matter comes before the Court on plaintiffs' motion for a preliminary injunction.

As the motions judge for the month of June, the undersigned considered the matter and heard oral argument because Judge Harris, to whom the case is assigned, was unavailable.

Most of the facts relevant to this case have previously been set forth in the opinion of the United States Court of Appeals for the District of Columbia Circuit in *Legal Assistance for Vietnamese Asylum Seekers ("LAVAS") v. Department of State*, 45 F.3d 469, 470–71 (D.C.Cir.1995). For the sake of clarity, the Court shall briefly recount the relevant facts of this case and the current posture of *LAVAS*, a case closely related to this action.

### A. Background Facts

Since 1975, when Saigon was captured by the North Vietnamese, hundreds of thousands of Vietnamese have fled Vietnam and have sought asylum in Hong Kong. Until 1988, Vietnamese asylum-seekers were accorded presumptive refugee status and placed in detention camps for processing and resettlement in other countries, the United States among them. When the number of people fleeing Vietnam increased in the late 1980's, the Hong Kong government announced that it was revoking the presumptive refugee status previously accorded those immigrants. The Hong Kong government instead began individually screening Vietnamese arrivals to determine whether those individuals qualified as refugees under the 1951 Refugee Convention.[1]

Nearly 50 countries, including the United States, adopted the new policy of the Hong Kong government at an international conference in Geneva in 1989; the policy was set forth in a Comprehensive Plan of Action ("CPA"). The CPA provides that those Vietnamese who are screened-out by the Hong Kong government (that is, those found not to qualify for refugee status) should return to Vietnam and seek resettlement through Vietnam's Orderly Departure Program ("ODP").

The CPA contemplates both voluntary and involuntary repatriation of screened-out Vietnamese immigrants. The Hong Kong government has begun forcibly repatriating Vietnamese immigrants, and the most recent forced-repatriation flight from Hong Kong took place in late May of this year.

Despite the CPA, the United States Consulate in Hong Kong continued to process the visa applications of certain screened-out Vietnamese—namely, those Vietnamese with spouses or other close relatives in the United States who already possessed approved immigrant visa ("IV") petitions.[2] In April 1993, however, the United States Department of State changed its policy and directed the U.S. Consulate in Hong Kong to cease processing visa applications of this class of screened-out Vietnamese. Under that new policy, the Consulate refused to process the visa applications of any screened-out Vietnamese and began instructing those persons that they were required to return to Vietnam for processing through the ODP.

### B. LAVAS v. Department of State

In February 1994, a nonprofit group, Legal Assistance for Vietnamese Asylum Seekers ("LAVAS"), and several named individual plaintiffs (Vietnamese detainees in Hong Kong and spouses of those detainees legally residing in the United States) filed suit against the Department of State and moved for a temporary restraining order and preliminary injunction against the Department. Plaintiffs alleged in *LAVAS* that the Department's policy change violated the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1152(a)(1) (1995), because the Department's policy discriminated against immigrant Vietnamese on the basis of their country of origin. Plaintiffs in *LAVAS* also moved for certification of a plaintiff class consisting of screened-out Vietnamese in Hong Kong camps whose initial petitions to

---

1. The Refugee Convention defines a "refugee" as a person who, owing to a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, is unwilling or unable to return to his or her country. 1951 Refugee Convention, art. 1, ¶ 2.

2. The three-step process whereby Vietnamese immigrants with sponsors in the United States obtain visas is outlined in the opinion of the D.C. Circuit in *LAVAS*, 45 F.3d at 470.

the INS had been accepted and who therefore possessed IV applications, but who were no longer eligible for further processing in Hong Kong.

On the same day that plaintiffs filed suit in *LAVAS,* the Department reversed its policy and once again began screening non-refugee Vietnamese with IV petitions at the United States Consulate in Hong Kong. This processing continued until December 1, 1994, when the Department again reversed course and refused to process the applications of any non-refugee Vietnamese who had not reported themselves "document-qualified" (in possession of all the relevant documentation for their visa processing) by that date.

On March 2, 1994, Judge Harris denied the *LAVAS* plaintiffs' motion for a temporary restraining order. The Court of Appeals exercised jurisdiction over an appeal from the denial of plaintiffs' motion for a TRO and granted emergency injunctive relief. Judge Harris then consolidated a hearing on plaintiffs' motion for a preliminary injunction with a hearing on the merits and issued a Memorandum Order on April 28, 1994, granting defendants' motion for summary judgment and denying plaintiffs' motion for class certification as moot. Plaintiffs appealed.

On February 3, 1995, a panel of the Court of Appeals issued an opinion holding that the Department's policy of refusing to process non-refugee Vietnamese immigrants' visa applications in Hong Kong discriminated against those persons on the basis of their place of origin, in violation of the INA, 8 U.S.C. § 1152(a)(1), which provides that "no person shall ... be discriminated against in the issuance of an immigrant visa because of the person's ... nationality ... or place of residence." *LAVAS v. Department of State,* 45 F.3d 469, 473 (D.C.Cir.1995). The court concluded that "Congress has unambiguously directed that no nationality-based discrimination shall occur" and that there was "no room" for the INS' interpretation of the statute. *Id.* The court therefore found that the Department's policy was in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), because it was not implemented "in accordance with law." *Id.* at 474.

The Department subsequently petitioned the D.C. Circuit for rehearing, arguing, *inter alia,* that the case had become moot. On May 11, 1995, the Court of Appeals issued an order holding defendants' petition for rehearing in abeyance and remanding *LAVAS* to this Court for a determination of mootness. Judge Harris ordered the parties to brief the issue; the matter is not yet fully briefed and ripe for adjudication. The mandate from the Court of Appeals in *LAVAS* has not issued.

### C. Facts Specific To This Action

The specific facts of this case are as follows: Plaintiff Vo Van Chau ("Mr. Vo") is an American citizen living in the United States. His wife, plaintiff Le Thi Thanh Xuan ("Mrs. Le"), is a screened-out Vietnamese immigrant currently detained at High Island, a Hong Kong detention center. She has been detained in the Hong Kong camps since she fled Vietnam in 1988. *See* Pls.' Mot. for Prelim.Inj. at 2–4. Mrs. Le and Mr. Vo were married in Hong Kong in December 1991. Decl. of Le Thi Thanh Xuan ("Le Decl.") at 2.

Mr. Vo filed a petition with the INS for an immigrant visa for Mrs. Le in January 1992, and the INS granted the petition. Mr. Vo subsequently became a citizen of the United States. Mrs. Le's petition became current in April 1995. Since Mrs. Le's petition did not become current until after the Department had reinstituted its policy of refusing to process IV applications of screened-out Vietnamese immigrants, the Department has informed Mrs. Le that she must return to Vietnam and pursue resettlement through the ODP there. *See* Pls.' Mot. for Prelim.Inj. at 4.

The Hong Kong government recently has been using the High Island Detention Center as a staging ground for forced repatriations. The Hong Kong government has also publicly vowed to clear the camps within the next year and to accelerate its forced repatriation program. They apparently have begun this process with those persons who, like Mrs. Le, arrived in Hong Kong in 1988. *See* Pls.' Mot. for Prelim.Inj. at 4.

Plaintiffs seek an order from this Court declaring that the Department's policy of

refusing to process the visa applications of screened-out Vietnamese with IV status violates the Constitution, the INA, and the APA. Plaintiffs also seek relief in the nature of mandamus against the Department, requiring the Department to process Mrs. Le's visa application at the U.S. Consulate in Hong Kong. Finally, plaintiffs have requested the Court to issue a preliminary and a permanent injunction enjoining defendants from refusing to process Mrs. Le's application. The Court concludes that preliminary injunctive relief is warranted in this case. The other matters raised by plaintiffs will be considered by Judge Harris in due course.

## II. ANALYSIS

■ This Circuit has adopted a four-part test to determine whether a preliminary injunction should be granted. Plaintiffs must demonstrate that (1) they are likely to prevail on the merits; (2) they will suffer irreparable harm absent the injunction; (3) an injunction would not substantially impair the rights of the defendants or other interested parties; and (4) an injunction would be in the public interest, or at least would not be adverse to the public interest. *Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1208 (D.C.Cir.1989); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 842–44 (D.C.Cir.1977). This four-part test is a flexible one: injunctive relief may be granted with either a high likelihood of success and some injury, or vice versa. *Cuomo v. United States Nuclear Regulatory Commission,* 772 F.2d 972, 974 (D.C.Cir.1985). "Plaintiffs are not required to prevail on each of these factors; rather the factors should be viewed as a continuum—more of one factor compensating for less of another." *Brown v. Artery Organization, Inc.,* 654 F.Supp. 1106, 1114 (D.D.C. 1987).

### A. Likelihood Of Success On The Merits

■ The unusual posture of this case with respect to *LAVAS* renders plaintiffs' likelihood of success on the merits of their case not only high, but virtually certain. In *LAVAS,* the Court of Appeals held that the Department's practice of refusing to process screened-out Vietnamese immigrants at the United States Consulate in Hong Kong violates 8 U.S.C. § 1152(a)(1) of the INA, and thus violates the APA, because that policy discriminates against immigrants based on their nationality and therefore is not "in accordance with law." The practice found to be discriminatory in *LAVAS* is exactly the practice against which plaintiffs request an injunction in this case. *LAVAS* is the law of this Circuit, and this Court is bound to follow it. Therefore, plaintiffs stand a strong, indeed virtually certain, chance of succeeding on the merits.

■ Remarkably, defendants contend that plaintiffs cannot show that they are likely to succeed on the merits of their case. First, defendants argue that this Court is not bound to follow *LAVAS,* since the mandate in *LAVAS* has not yet issued from the Court of Appeals. This argument has no merit. The District Court "is bound by the principle of *stare decisis* to 'abide by a recent decision of one panel of [the Court of Appeals] unless the panel has withdrawn the opinion or the court *en banc* has overruled it'." *Association of Civilian Technicians, Montana Air Chapter v. FLRA,* 756 F.2d 172, 176 (D.C.Cir.1985) (quoting *Brewster v. Commissioner of Internal Revenue,* 607 F.2d 1369, 1373 (D.C.Cir.1979)). The fact that a party has petitioned for rehearing, automatically resulting in the stay of the mandate under Rule 41, Fed.R.App.P., is irrelevant.

■ Defendants also argue that this case differs from *LAVAS,* in that evidence is available in the record of this case that was not available or not highlighted in the record of *LAVAS.* Specifically, defendants provide evidence that the Department of State has a policy of refusing to process in Thailand screened-out Laotian immigrants, similar to its policy of refusing to process screened-out Vietnamese immigrants in Hong Kong. *See* Aff. of Michael Hancock ("Hancock Aff.") at ¶ 6; Aff. of Wayne Leininger ("Leininger Aff.") at ¶ 16 (noting that "the same decision not to process [screened-out refugees in Hong Kong] would be applied to Cambodian or Laotian applicant[s]"); Aff. of Charles Sykes ("Sykes Aff.") at ¶ 4 (noting that "the CPA covers Laotian as well as Vietnamese

asylum seekers in Southeast Asia" and that "the majority of the screened-out Lao are in Thailand, where our embassy advises any who are beneficiaries of [IV] petitions to return to Laos ...").

Defendants claim that the affidavits of Messrs. Sykes, Leininger and Hancock "demonstrate[ ] that the policies of the Department of State are not impermissibly-based on nationality" and that the declarations instead show that the Department's policy "is based solely upon the status of the [sic] as screened out applicant and not the nationality of the applicant...." Defts.' Opp'n at 17–18. The Court fails to see how these declarations prove that point. What the declarations appear to prove is that the Department of State maintains a policy that discriminates against asylum-seekers from not one, but two or three specific countries. In any event, the fact that evidence exists that the Department maintains the same policy with respect to Laotians and Cambodians provides no argument or justification for straying from the result reached by the Court of Appeals in *LAVAS*.

Finally, defendants argue that plaintiffs are not likely to succeed on the merits because, as the government argues in its petition for rehearing, "there is an important difference between the Secretary [of State]'s consular venue power and the consular officer's authority to issue a visa." Defts.' Opp'n at 19. Defendants argue that 8 U.S.C. § 1152(a)(1) speaks only to non-discrimination in the issuance of a visa, not non-discrimination in regulating the place where visa applications shall be made. *Id.* Defendants also contend that the political question doctrine prevents this Court from reviewing consular venue decisions. *Id.* at 20 n. 8. These arguments, too, are foreclosed by *LAVAS*. The Court of Appeals already has considered and rejected these contentions in *LAVAS*. It first implicitly rejected the non-justiciability argument to reach the merits, and then it expressly held that the Depart-

ment's refusal to process screened-out Vietnamese asylum-seekers in Hong Kong violated the statute. This proceeding is not the proper forum to reargue the merits of *LAVAS*.

In sum, *LAVAS* is the law of this Circuit, and will remain so unless or until the opinion in *LAVAS* is withdrawn by the panel or reversed by the Court of Appeals *en banc*. Plaintiffs' likelihood of success on the merits in this case therefore is not just substantial but virtually certain.

### B. Irreparable Injury

 Plaintiffs have made a strong case that Mrs. Le will be irreparably harmed in the absence of preliminary injunctive relief. Mrs. Le has been detained in the Hong Kong detention camps since 1988. Le Decl. ¶ 3. High Island, the Hong Kong camp where Mrs. Le has been detained since 1994, is the Hong Kong government's staging site for forced-repatriation flights. Decl. of Pamela Baker, ¶ 3. Hong Kong police recently have used tear gas to quell disturbances at the High Island and Whitehead camps. Decl. of Jaclyn Fabre, ¶¶ 4–15, and attachment (listing dozens of Vietnamese detainees injured by "direct impact assaults" of mace, police batons, and the like during the disturbances).[3] In sum, Mrs. Le appears to be in some physical danger at High Island and is also in danger of being forcibly repatriated from High Island to Vietnam.

Should Mrs. Le return to Vietnam (voluntarily or involuntarily) she would have to obtain an exit visa through Vietnam's Orderly Departure Program ("ODP"). Vietnam does not recognize marriages performed outside the country except in very limited circumstances. Decl. of Lan Quoc Nguyen at ¶¶ 8, 9. The Vietnam government is less likely to grant an exit visa to a person seeking to rejoin his or her spouse if that person was married outside of Vietnam. *See* Decl. of Minh Hai at 2, ¶ 9. Mrs. Le and Mr. Vo

---

**3.** The Declaration of Ms. Fabre is disputed by defendants, *see* Supplemental Aff. of Wayne Leininger (filed June 26, 1995), Attachment 2 (noting inconsistencies or inaccuracies in the Fabre Decl.). Both sides, however, agree that there have been at least two recent incidents where the Hong Kong police used tear gas on hundreds of Vietnamese detainees. For the purposes of this Opinion, this fact suffices to establish that Mrs. Le is indeed in some physical danger at High Island camp.

were married in Hong Kong in 1992. Therefore, the possibility that Mrs. Le could obtain an exit visa should she return or be returned to Vietnam, if not foreclosed, is at least called into substantial doubt.[4] The cumulative effect of these potential injuries—the ongoing threat to Mrs. Le's health and safety, the ongoing threat of repatriation, and the strong possibility that, should Mrs. Le be repatriated, she could not secure an exit visa—is enough to satisfy this Court that irreparable harm would exist here.

■ The Court of Appeals in *LAVAS* necessarily found irreparable injury to exist when it granted plaintiffs' request for emergency injunctive relief after this Court denied plaintiffs' request for a temporary restraining order. *See LAVAS v. Department of State,* No. 94–5046, 1994 WL 163723 (D.C.Cir. March 6, 1994) (order granting emergency injunctive relief). At oral argument in this case, defendants maintained that the potential for irreparable harm was a near-certainty in *LAVAS,* because several of the plaintiffs in *LAVAS* were scheduled to board a forced-repatriation flight only days after plaintiffs filed their petition for emergency injunctive relief in the Court of Appeals. The same situation is not present here, they say, since Mrs. Le is not currently scheduled on a forced-repatriation flight, and the Court was advised that the next such flight is not scheduled to occur until August. *See* Leininger Aff. at ¶ 17 (noting that Mrs. Le was not scheduled on a July forced-repatriation flight). *But see* Letter from B.J. Bresnihan to John Swensen, Pls.' Reply App., Tab 2 (stating with respect to Mrs. Le and others that he could not give "any undertaking that these ... individuals will not be returned to Vietnam before a decision is handed down in *LAVAS v. Department of State*").

The Court finds that even assuming the potential for irreparable injury to plaintiffs in this case is somewhat less than the imminent injury faced by the plaintiffs in *LAVAS,* that difference in degree is far subsumed by the plaintiffs' likelihood of success on the merits in this case. As the court stated in *Cuomo v. United States Nuclear Regulatory Commission,* 772 F.2d at 974, a court's decision to award preliminary injunctive relief is not a wooden exercise. A court may award injunctive relief where the potential for irreparable injury is high and the possibility of success on the merits somewhat lower, or vice versa. *Id. See also Population Institute v. McPherson,* 797 F.2d 1062, 1078 (D.C.Cir. 1986). The Court of Appeals obviously did not have the benefit of its opinion in *LAVAS* when it issued the order granting the *LAVAS* plaintiffs preliminary injunctive relief; but this Court does have the benefit of *LAVAS,* and it finds that plaintiffs' likelihood of success on the merits is so high as to mitigate whatever lessened potential for injury exists here as compared to the *LAVAS* plaintiffs.

### C. Harm To Other Interested Parties And The Public Interest

■ The last two factors of the Court's analysis may be treated with greater dispatch. Defendants assert that, should this Court grant plaintiffs' motion for a preliminary injunction, the court order would have a negative impact on the foreign policy of the United States. The Department contends that the defendants and the public interest "will suffer substantial harm" should the Department be ordered to process Mrs. Le's application, because such a court order "would require discussions of broad foreign policy issues including the U.S. policy toward the CPA ... and would hamper the State

---

**4.** Again, defendants contest this assertion; they contend that there have been "at least three" Vietnamese who have received exit visas although their marriages occurred outside Vietnam. Aff. of Martha Sardinas ("Sardinas Aff.") (filed June 26, 1995), Attach. 1, at 2 (noting that "we [at the Orderly Departure Program in Vietnam] know of at least three cases where this has occurred"). This assertion, however, does not answer plaintiffs' claim that Mrs. Le's chances of obtaining an exit visa may be made substantially more difficult because of the circumstances of her marriage. Plaintiffs have opposed the supplemental filing of the Sardinas Affidavit. They maintain that the Sardinas Affidavit is not responsive to their supplemental declarations filed with Plaintiffs' Reply, and that the information in the Sardinas Affidavit could have been put forward by defendants in their Opposition. The Court will accept the Sardinas Affidavit for filing as responsive to plaintiffs' supplemental declarations.

Department's ability to negotiate with foreign powers in the sensitive area of repatriation and resettlement of Vietnamese asylum seekers." Defts.' Opp'n at 27; Hancock Aff., ¶ 9. Defendants also contend that a court order mandating the processing of Mrs. Le's visa application would also "interfere with the Department's ability to adjudicate immigrant visas free of judicial interference...." Defts.' Opp'n at 27. Finally, defendants claim that a court order in this case would discourage the voluntary repatriation of those Vietnamese still in Hong Kong detention camps.

Defendants' argument that a court order in this case would "interfere with important foreign policy objectives" and would "hamper the State Department's ability to negotiate" with foreign powers rings hollow. It is a recasting of the argument made by the Department in *LAVAS* that the issue in that case was nonjusticiable. Again, this is not the proper forum to relitigate *LAVAS*; it is apparent from the opinion of the D.C. Circuit in *LAVAS* that that court did not consider this issue nonjusticiable.

As for defendants' argument that a court order would dissuade Vietnamese in the Hong Kong camps from voluntarily returning to Vietnam, *see* Supplemental Aff. of Wayne Leininger (filed June 26, 1995), at ¶¶ 13–15 (noting a correlation between the Department's decision to resume processing and "de-volunteering"), the Court notes that events outside the control of the Department of State and this Court—namely, the Smith Resolution recently passed by the House of Representatives—have had an equal, if not much greater, hand in causing the ebb and flow of volunteers for repatriation than has any court order. *See* June 14 Leininger Aff. at ¶ 14 (noting that the Smith Resolution "holds out the prospect of resettlement in the U.S. of about half the 40,000 camp residents"); Sykes Aff. at ¶¶ 9–11 (assessing the "damage done by the proposed legislation to the CPA and U.S. policy interests").

The impact on the Department of a court order requiring processing of Mrs. Le's application is negligible from an administrative standpoint. Only approximately 100 immigrant visa beneficiaries remain in the Hong Kong camps, out of a total population of 22,000 detainees. Decl. of David Ireland, ¶ 5. The Consulate is still processing screened-out Vietnamese with IV petitions who proved themselves document-ready by the December 1, 1995, cut-off date imposed by the Department. The Consulate has processed at least 19 screened-out Vietnamese immigrants in the past four months. Decl. of Mark Zuckerman at ¶ 23. A court order requiring processing of Mrs. Le's application would have no appreciable additional administrative impact on the Department.

■ Finally, defendants argue that the public interest will not be served by a court order granting preliminary injunctive relief, citing the same general arguments against court interference in the conduct of foreign affairs. Plaintiffs point out that the public interest is harmed by the defendants' perpetuating a policy that has been found by the D.C. Circuit to discriminate against Vietnamese immigrants on the basis of their nationality in violation of law. Even though there surely is a public interest in the effective and autonomous conduct of foreign policy by the executive branch, the public interest in an even-handed, non-discriminatory immigration policy is also strong. In view of the decision of the Court of Appeals in *LAVAS* that that interest is being thwarted, plaintiffs' strong likelihood of success on the merits, and the probability of irreparable harm to plaintiffs, the Court concludes that injunctive relief is appropriate.

### III. CONCLUSION

The Court finds that the plaintiffs have adequately established more than a substantial likelihood of success on the merits of their case. In addition, plaintiffs have adequately demonstrated the probability of irreparable injury in the absence of injunctive relief. Finally, the Court finds that the harm to defendants from a court order granting preliminary injunctive relief is minimal at best, and that the public interest militates in favor of preliminary injunctive relief in this case. Accordingly, the Court grants plaintiffs' motion for a preliminary injunction.

\*　　\*　　\*

Plaintiffs' motion for leave to file supplemental declarations with their reply memorandum is also pending. Defendants did not oppose this motion on the understanding that they would be permitted to file supplemental declarations in response to plaintiffs' supplemental reply declarations. Plaintiffs' motion to file supplemental affidavits with their reply memorandum therefore is granted.

Plaintiffs now have moved for leave to file a supplemental declaration of Mark L. Zuckerman for the limited purpose of responding to Mr. Leininger's assertion in his affidavit filed June 26, 1995, that Hong Kong Refugee Coordinator Brian Bresnihan "has agreed to inform [the United States] Consulate not less than two weeks before any attempt to repatriate Mrs. Le might be made." Supp. Leininger Aff. at ¶ 21. The Court denies plaintiffs' motion because, while it may strengthen plaintiffs' irreparable injury argument, it does not appear that the supplemental Zuckerman declaration is otherwise relevant to the relief sought by plaintiffs and granted by this Court.

A separate Order accompanies this Opinion.

### ORDER

This matter came before the Court on Plaintiffs' Motion for Preliminary Injunction. The Court heard oral argument on June 21, 1995. Upon consideration of the Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction, Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, Plaintiffs' Reply, and Defendants' supplemental filing of responsive affidavits, and the entire record, and for the reasons stated in the Court's accompanying Opinion, Plaintiffs' motion for preliminary injunctive relief is granted. Accordingly, it is hereby

ORDERED, that Defendants, their agents, employees, and successors in office are hereby enjoined from implementing their decision to refuse processing of the immigrant visa application of Le Thi Thanh Xuan at the United States Consulate in Hong Kong; it is further

ORDERED, that Defendants, their agents, employees, and successors in office are hereby enjoined and directed to process forthwith the immigrant visa application of Le Thi Thanh Xuan at the United States Consulate in Hong Kong in accordance with their practice prior to December 1, 1994; it is further

ORDERED, that plaintiffs' motion to file supplemental declarations is GRANTED; it is further

ORDERED, that plaintiffs' opposition to defendants' filing of the Affidavit of Martha Sardinas is DENIED; and it is further

ORDERED, that plaintiffs' motion for leave to file the supplemental declaration of Mark L. Zuckerman is DENIED.

SO ORDERED.